UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------x

Amauri Rodriguez, 427276                    :
                                            :
                     Plaintiff,             :
                                            :
-v-                                         :
                                            :        Civil Action No. _____
                                            :
Warden Daniel Doherty, Captain Batten,      :
Corrections Officer F. Saleh, Corrections Officer  :        **PRO SE PRISONER CIVIL**
Rodriguez, Corrections Officer Acanto,      :        **RIGHTS COMPLAINT**
Corrections Officer John Doe #1, Corrections  :
Officer John Doe #2, Corrections Officer John Doe :
#3, Corrections Officer John Doe #4, Corrections  :
Officer John Doe #5, Corrections Officer John Doe :
#6, Corrections Officer John Doe #7, Corrections  :
Officer John Doe #8, Corrections Officer John Doe :
#9, RN Joshua Appuzo, RN Vivian Martell, RN  :
Diane Campbell-Hooks, RN Marybeth Moure-    :
Williams, RN Henry Mushi, individually & in their :
Official capacities,                        :
                     Defendants,            :
-------------------------------------------------------------------x

## I. JURISDICTION & VENUE

1.      This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation, under

color of state law, of rights secured by the United States Constitution & Constitution of the State

of Connecticut. The Court has jurisdiction under 28 U.S.C §1331 & 1343 (3). Plaintiff Rodriguez

seeks monetary damages & declaratory relief pursuant to 28 U.S.C. § 2201 & 2202.

2.      The District of Connecticut is an appropriate venue under 28 U.S.C. §1391(b) (2) because

it is where the events giving rise to this claim occurred.

1

## II. PLAINTIFF

3. Plaintiff Amauri Rodriguez, hereafter referred to as "Plaintiff Rodriguez," or "the Plaintiff," is & was at all times mentioned herein a prisoner of the State of Connecticut in custody of the Connecticut Department of Correction. He is currently confined in Osborn Correctional Institution, in Somers, Connecticut.

## III. DEFENDANTS

4. Defendant Daniel Doherty is the Warden of MacDougall –Walker Correctional Institution (MWCI). He is legally responsible for the operation of MWCI & for the welfare of all the inmates of that prison.

5. Defendant Batten is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Captain & was assigned to MWCI.

6. Defendant F. Saleh is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI.

7. Defendant Rodriguez is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer assigned to MWCI & was in control of the video camera for the Plaintiff's escort from the Q pod housing unit to the Restrictive Housing Unit (RHU) & extraction from his RHU cell.

8. Defendant Acanto is a Freedom of Information Liaison of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to Osborn Correctional Institution.

2

9.      Defendant John Doe #1 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Lieutenant & was assigned to MWCI & on December 2, 2022 escorted the Plaintiff from the Q pod housing unit to the RHU.

10.     Defendant John Doe #2 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI & on December 2, 2022 escorted the Plaintiff from the Q pod housing unit to the RHU in control of the Plaintiff's left side.

11.     Defendant John Doe #3 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI & on December 2, 2022, escorted the Plaintiff from the Q Housing unit to the RHU in control of the Plaintiff's right side.

12.     Defendant John Doe #4 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI & on December 2, 2022, extracted the Plaintiff from the cell in the RHU in control of the Plaintiff's right side.

13.     Defendant John Doe #5 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI & on December 2, 2022, extracted the Plaintiff from his cell in the RHU in control of the Plaintiff's left side.

14.     Defendant John Doe #6 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer &

3

was assigned to MWCI, & on December 2, 2022 was control officer for the Q Housing unit on first shift.

15.     Defendant John Doe #7 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI, & on December 1, 2022 was control officer for the Q Housing unit on second shift.

16.     Defendant John Doe #8 is a Correctional Officer of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the rank of Corrections Officer & was assigned to MWCI, & on December 1, 2022 was roving officer for the Q Housing unit on second shift.

17.     Defendant John Doe #9 is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Clinical Social Worker & was assigned to MWCI, & on December 1, 2022 was on duty for the Mental Health Unit (MHU) on second shift.

18.     Defendant Joshua Appuzo is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Registered Nurse & was assigned to the MWCI Medical Unit.

19.     Defendant Vivian Martell is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Registered Nurse & was assigned to the MWCI Medical Unit.

20.     Defendant Diane Campbell-Hooks is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Registered Nurse & was assigned to the MWCI Medical Unit.

4

21.    Defendant Marybeth Moure-Williams is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Registered Nurse & was assigned to the MWCI Medical Unit.

22.    Defendant Henry Mushi is an employee of the Connecticut Department of Correction who, at all times mentioned in this complaint, held the position of Registered Nurse & was assigned to the MWCI Medical Unit.

23.    Each defendant is sued individually & in his/her official capacity. At all times mentioned in this complaint, each defendant acted under color of state law.

## IV. FACTS

24.    The Plaintiff has been in the custody of the Commissioner of Correction since March 3, 2021 & is scheduled for release as early as December 2023 with his end of sentence in December 2024.

25.    On December 1, 2022, the Plaintiff was housed at MWCI, 1153 East St. South, Suffield, CT 06080; in the Q housing unit & employed as a "tierman" for that unit.

26.    At about 7:00pm on December 1, 2022 the Plaintiff asked the Q Housing unit control officer, Defendant John Doe #7, to call MHU because he was in emotional distress & visibly so. The Plaintiff had just been informed that his best friend, Leon Diaz, had been killed in a motor vehicle accident only a few hours before.

27.    The Plaintiff made numerous requests to Defendants John Doe #7 & John Doe #8 for mental health assistance until 11:00pm on December 1, 2022.

28.    Each request made by the Plaintiff was answered with, "they are on their way." After being ignored, the Plaintiff engaged in maladaptive coping mechanisms, remaining awake until approximately 7:00pm on December 2, 2022.

5

29. On the morning of December 2, 2022 at 7:00am, the Plaintiff asked Defendants John Doe #6 & Saleh to call MHU staff. When he requested assistance, he was in obvious distress.

30. Instead of addressing the Plaintiff's request, Defendant Saleh stated that the Plaintiff appeared to be intoxicated.

31. Around 10:00am, the Plaintiff was placed in handcuffs & escorted to RHU by Defendants Rodriguez, John Doe #1, John Doe #2 & John Doe #3 without resisting. The Plaintiff's request for MHU assistance was again ignored.

32. Upon arrival at RHU, the Plaintiff was placed in a cell. The cell's door was secured. The Plaintiff was then uncuffed through the cell door trap.

33. Unrestrained & in the cell by himself, with the cell door closed, defendants commenced a strip search of the Plaintiff by verbal commands, ordering him to remove articles of clothing & visually inspecting them.

34. At this point Defendant John Doe #1 advised the Plaintiff he would need to submit to a urinalysis. The Plaintiff did not refuse but again asked to speak with someone from MHU.

35. The Plaintiff followed all commands during the strip search. When he was ordered to drop his boxers, squat & cough two times, he had objected to the second order stating that he had just done so, & again requested MHU.

36. The Plaintiff was then order to put his hands in front of him through the cell door trap & was handcuffed again. The cell door trap was secured & the Plaintiff was left in the cell for about an hour.

37. During that hour, correctional officers assigned to RHU toured several times. Each time they passed the Plaintiff's cell he asked to speak with someone from MHU & for his mental health medications.

38.    After an hour Defendants Batten, Rodriguez, John Doe #4, John Doe #5 & an unknown number of additional corrections officers returned to the Plaintiff's RHU cell.

39.    The Plaintiff refused to be uncuffed through the cell door trap until he could speak with someone from MHU. At this point, the cell door was opened & Defendant Batten pepper sprayed the plaintiff in his face. The cell door was then secured.

40.    After several minutes, Madeline Schena, LCSW, the Plaintiff's MHU social worker came & spoke with the Plaintiff. The Plaintiff was unable to focus & stated that his eyes were burning.

41.    Moments after Ms. Schena departed, the Plaintiff's cell door opened abruptly. Defendants John Doe #4 & John Doe #5 entered the cell & each grabbed the Plaintiff by an arm & slammed him against the cell wall with great force off his feet.

42.    Defendants John Doe #4 & John Doe # 5 then maliciously & sadistically dragged the Plaintiff from the cell into the RHU corridor & there slammed the Plaintiff into the corridor wall, this time face first.

43.    During this forceful extraction, a defendant stomped on the Plaintiff's foot, reinjuring an already open wound from a recent ingrown toenail removal. This was easy to identify by the bandage on the toe.

44.    The Plaintiff was then propped up against & pinned to the corridor wall by Defendants John Doe #4 & John Doe #5. Defendant Batten then sadistically ripped the Plaintiff's shorts & boxers from his person in humiliating fashion, leaving him naked in front of more than ten corrections officers. The Plaintiff cried that he was in pain, but he was ignored.

45.    Defendants John Doe #4 & John Doe #5 then dragged the Plaintiff into the RHU shower & held his head under the showerhead for about twenty seconds, making the effects of the chemical worse.

46.    Defendants John Doe #4 & John Doe #5 then dragged the Plaintiff from the RHU shower into the Behavior Observation Status (BOS) cell where they violently positioned the Plaintiff face down on the BOS cell bed with his hands handcuffed underneath his body.

47.    Defendants John Doe #4 & John Doe #5 & other persons unknown then pinned the Plaintiff to the bed, naked, wet & restrained & wantonly, sadistically, maliciously & feloniously punched the back of the Plaintiffs head & torso all the while unable to resist.

48.    The excessive use of force was captured on video by Defendant Rodriguez. The Plaintiff could be clearly heard yelling, "why are you punching me?" &, "I'm not resisting." This senseless beating continued for several minutes until Defendant Batten said, "stop hitting him, that's enough."

49.    The Plaintiff was then left on the bed, face down, for several minutes. When the defendants returned they dressed him in a Ferguson gown & placed him in five point restraints.

50.    In this instance the Plaintiff was in hand & ankle cuffs connected by a short chain, causing the Plaintiff to stoop with his h& below his knees when standing.

51.    The Plaintiff was left in the BOS cell without his medication until December 3, 2022 & did not receive wound care until December 5, 2022. When mentioned, no response was given by any defendant when the Plaintiff complained about his head hurting after the beating he received.

52.    On December 7, 2022, the Plaintiff had a court trip for another matter & was discharged from RHU upon his return to MWCI. Upon receipt of his property at Assignment & Processing

8

(A&P), the Plaintiff was escorted to the Q Housing Unit by Defendant John Doe 4 or 5. This Defendant made snide comments & jokes to other corrections officers present about the Plaintiff.

53.     While being escorted by Defendant John Doe #4 or #5, the Plaintiff remained silent, ignoring the defendants comments & fearful of his intentions.

54.     From December 2, 20220 to present the Plaintiff has suffered from headaches, ear pain, nausea & dizziness at an intensity & frequency not experienced prior to the assault & battery received by the defendants named supra.

55.     On December 26, 2022, the Plaintiff submitted a grievance regarding the conduct of the defendants & injuries he sustained on December 2, 2022. No receipt was issued in accordance with Administrative Directive 9.6, Administrative Remedies.

56.     Upon information & belief, the Plaintiffs submission of the December 26, 2022 grievance served as the catalyst for the MWCI administration to issue a "gag order" to all subordinate staff regarding the Plaintiffs injuries & the assault upon his person on December 2, 2022.

57.     Although the Plaintiff received wound care for his ingrown toenail after his RHU discharge, acknowledgement of his written or verbal complaints of symptoms described supra, was not given by Defendants Appuzo, Martell, Campbell-Hooks, Moure-Williams or Mushi.

58.     Between January 3 & May 10, 2023, the Plaintiff wrote MWCI Medical for issues unrelated to injuries sustained on December 2, 2022, & would receive care for those unrelated issues.

59.     On February 6, 2023, having had no response to the December 26, 2022 grievance, the Plaintiff submitted a level 2 grievance. Again, no receipt was issued.

60.     On April 21, 2023 after months of sick call requests for symptoms mentioned in paragraph 52, supra, the Plaintiff submitted a health services administrative remedy. Again, no

9

receipt was issued in accordance with Administrative Directive 8.9, Health Service Administrative Remedies.

61.    On May 10, 2023, the Plaintiff was transferred to Osborn Correctional Institution (OCI) located at 335 Bilton Road, P.O. Box 100, Somers, CT, 06071.

62.    Since housed at OCI the Plaintiff continues to suffer the symptoms described in paragraph 52, supra. Recently the Plaintiff has developed anxiety & intermittent episodes of emotional distress & fainting that has led to a diagnosis of Post Traumatic Stress Disorder (PTSD directly related to the December 2, 2022 assault.

63.    The Plaintiff now receives medical care from providers at OCI who have felt it necessary to send him to UCONN Health for follow up on his injuries as well as emergent care on several occasions.

64.    Upon information & belief, the Plaintiff avers the OCI medical staffs recognition of the Plaintiff's symptoms & subsequent treatment of the long term affects of injuries sustained, proves neglect & willful disregard of Defendants Appuzo, Martell, Campbell-Hooks, Moure-Williams, & Mushi & the MWCI medical team as a whole.

65.    On July 6, 2023, the Plaintiff was interviewed by Captain S. Perez from the Department of Corrections central office regarding the incident on December 2, 2022.

66.    On July 9, 2023, the Plaintiff was apprised of his right to request information via the Freedom of Information Act. Accordingly, he requested the incident reports for December 2, 2022. This request was received by Defendant Acanto on July 10, 2023.

67.    On July 14, 2023, Defendant Acanto sent a letter to the Plaintiff acknowledging his July 9, 2023 request & indicated he would be contacted in the "near future."

68.    On July 17, 2023, the Plaintiff again sent a request to Defendant Acanto, requesting the incident reports, disciplinary reports & all records regarding his detention in RHU from December 1-10, 2022.

69.    On July 18, 2023 Defendant Acanto received & responded to the Plaintiffs July 17, 2023 request & stated the Plaintiff would need to be more specific concerning his request for records in RHU from December 1-10, 2022, but the other documents would be included with his prior request.

70.    On July 23, 2023, the Plaintiff made another request, this time for the tracking number associated with the December 2, 2022 video camera recording. The request was marked received on August 2, 2023 in excess of the four days mandated by the Freedom of Information Act.

71.    Defendant Acanto responded on August 4, 2023 that the Plaintiff's request was forwarded to the DOC central office & he would receive the information when it "becomes available."

72.    Again, on August 4, 2023 the Plaintiff wrote to Defendant Acanto that he had not received any requested documents. The request was marked received by Defendant Acanto on August 7, 2023. Defendant Acanto responded on August 28, 2023 the Plaintiff was billed "in error" & the report was "not yet" available.

73.    On September 6, 2023, the Plaintiff wrote to inmate records for all information requested from Defendant Acanto, knowing these reports were included in his master file, to no avail.

74.    In addition, on September 6, 2023 the Plaintiff wrote to Defendant Acanto to inquire into the status & processing of payment he made for 78 pages two weeks prior. The request was marked received on September 11, 2023. Defendant Acanto responded on September 13, 2023

11

that he had written the Plaintiff earlier that he was "billed in error." The referenced documents have not been seen since.

75.    On September 7, the Plaintiff submitted a notarized request for all previously requested documents & a new request for use of force reports & log entries for the December 2, 2022 incident.

76.    Upon information & belief, the Plaintiff avers that, knowledgeable of statutes of limitation, Defendant Acanto & his superiors have intentionally delayed rendering the requested documents knowing criminal charges are likely to be filed. Deliberate delay of these documents has already prevented the Plaintiff from naming the Defendant John Doe's in this Complaint.

## V. EXHAUSTION OF LEGAL REMEDIES

77.    The Plaintiff used the Department of Correction grievance procedure available to all prisoners. On December 26, 2022, the Plaintiff presented facts related to this complaint. No receipt or response was given per Administrative Directive 9.6, Administrative Remedies.

78.    On February 6, 2023, the Plaintiff submitted a Level 2 grievance, again, no receipt or response was given per A.D. 9.6 Administrative Remedies.

79.    The Plaintiff used the Department of Correction Health Service Administrative Remedy procedure available to all prisoners. On April 21, 2023, the Plaintiff presented facts related to this complaint. Neither receipt nor response was given per Administrative Directive 8.9, Health Service Administrative Remedies.

80.    The Plaintiff submits that the administration of MWCI intentionally barred him from using the Administrative Remedy process available. Therefore, exhaustion of remedies should be waived, as it was not "actually available." See *Ross v. Blake*, 578 U.S. 632 (2016), the court held

12

unavailability may be demonstrated when "the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use by an ordinary prisoner."

## VI. LEGAL CLAIMS

81.    The Plaintiff hereby realleges & incorporates by reference the entirety of the foregoing paragraphs 1 through 80.

82.    As a direct and proximate result of the negligence, recklessness and carelessness of the defendants, the Plaintiff has suffered injuries & damages some or all of which may be permanent in nature, including but not limited to; contusions, abrasions & injuries to his muscles, ligaments & tendons; neurological & traumatic brain injury; chronic migraine, vertigo and dizziness; associated physical pain and suffering.

83.    As a direct and proximate result of the aforesaid negligence, recklessness and carelessness of the defendants, the Plaintiff has & continues to suffer great physical & emotional pain. Including but not limited to mental anguish, frustration & anxiety over his been assaulted & limited ability to engage in and enjoy all life activities, usual occupation, resulting loss of earnings and future earning capacity as he had prior to the incident as well as future medical expenses as result of his injuries.

84.    Defendant Daniel Doherty's issuance of a 'gag order' to his subordinates & denial of the Plaintiff's access to the grievance process violated the Plaintiff's rights & constituted a violation of *redress of grievances & free speech* under the First Amendment to the United States Constitution and *due process & equal protection* violations under the Fourteenth Amendment to the United States Constitution. His deliberate infliction of emotional distress constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution. Furthermore, his willful conspiracy to conceal staff misconduct, ordering his subordinates to

13

ignore the Plaintiffs requests for medical care & actions described supra, violated Title 18, USC §241, Conspiracy against rights; Title 18, USC §242, Deprivation or rights under color of law; and Title 18 USC §1035, False statements related to healthcare matters.

85.    Defendant Batten, ordering subordinates use of excessive force, his own use of excessive force, deliberate infliction of emotional distress, forcible removal of the Plaintiff's clothing and excessive search of his person violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution & *unreasonable search* under the Fourth Amendment to the United States Constitution. Furthermore, his willful orders of subordinates use of excessive force violated Title 18, USC §373(a) Solicitation to commit a crime of violence; Title 18, USC §241, Conspiracy against rights; & Title 18, USC §242, Deprivation or rights under color of law.

86.    Defendant F. Saleh's deliberate infliction of emotional distress & indifference to mental health violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

87.    Defendant Rodriguez's indifference & failure to report the use of excessive force violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution & violated Title 18, USC §373(a) Solicitation to commit a crime of violence; Title 18, USC §241, Conspiracy against rights.

88.    Defendant Acanto's denial and hindrance of access to records through the Freedom of Information process violated Plaintiff's rights & constituted a violation of his right to *redress of grievances & free speech* under the First Amendment to the United States Constitution as well as due *process & equal protection* violations under the Fourteenth Amendment to the United States

14

Constitution. Furthermore, his actions supra violated Title 18, USC §241, Conspiracy against rights and Title 18 USC §1035, False statements related to healthcare matters.

89.     Defendant John Doe #1 indifference to the use of excessive force & excessive search of the Plaintiff's person violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution & *unreasonable search* under the Fourth Amendment to the United States Constitution. Furthermore, his failure to report the use of excessive force violated Title 18, USC §373(a) Solicitation to commit a crime of violence; Title 18, USC §241, Conspiracy against rights.

90.     Defendant John Doe #2 use of excessive force & deliberate infliction of emotional distress violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

91.     Defendant John Doe #3 use of excessive force & deliberate infliction of emotional distress violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

92.     Defendant John Doe #4 use of excessive force, deliberate infliction of bodily injury & emotional distress, and excessive search of the Plaintiff's person violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution and *unreasonable search* under the Fourth Amendment to the United States Constitution. Furthermore, his failure to report the use of excessive force violated Title 18, USC §373(a) Solicitation to commit a crime of violence; Title 18, USC §241, Conspiracy against rights.

93.     Defendant John Doe #5 use of excessive force, deliberate infliction of bodily injury & emotional distress, and excessive search of the Plaintiff's person violated the Plaintiffs rights &

15

constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution and *unreasonable search* under the Fourth Amendment to the United States Constitution. Furthermore, his failure to report the use of excessive force violated Title 18, USC §373(a) Solicitation to commit a crime of violence; Title 18, USC §241, Conspiracy against rights.

94.     Defendant John Doe #6 deliberate infliction of emotional distress & indifference to mental health & negligence violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

95.     Defendant John Doe #7 deliberate infliction of emotional distress & indifference to mental health & negligence violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

96.     Defendant John Doe #8 deliberate infliction of emotional distress & indifference to mental health & negligence violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

97.     Defendant John Doe #9 deliberate infliction of emotional distress & indifference to mental health & negligence violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution.

98.     Defendant Apuzzo's deliberate infliction of emotional distress, indifference to medical needs, willful denial of medical care, negligence and falsification of records violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution also violating Title 18, USC §241, Conspiracy against rights and Title 18 USC §1035, False statements related to healthcare matters.

16

99. Defendant Marttell's deliberate infliction of emotional distress, indifference to medical needs, willful denial of medical care, negligence and falsification of records violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution also violating Title 18, USC §241, Conspiracy against rights and Title 18 USC §1035, False statements related to healthcare matters.

100. Defendant Campbell-Hooks' deliberate infliction of emotional distress, indifference to medical needs, willful denial of medical care, negligence and falsification of records violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution also violating Title 18, USC §241, Conspiracy against rights and Title 18 USC §1035, False statements related to healthcare matters.

101. Defendant Mushi's deliberate infliction of emotional distress, indifference to medical needs, willful denial of medical care, negligence and falsification of records violated the Plaintiffs rights & constituted *cruel & unusual punishment* under the Eighth Amendment to the United States Constitution also violating Title 18, USC §241, Conspiracy against rights and Title 18 USC §1035, False statements related to healthcare matters.

102. The Plaintiff has no plan, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been & will continue to be irreparably injured by the conduct of the Defendants unless this court grants declatory relief, which the Plaintiff seeks.

### VII. PRAYER FOR RELIEF

103. WHEREFORE, the Plaintiff respectfully prays that this court enter a judgment granting the Plaintiff:

104. A declaration that the acts & omissions described herein violated the Plaintiff's rights under the Constitution of the United States & left him with permanent life altering injuries.

17

105.    Compensatory damages in the amount of one hundred and fifty thousand dollars

($150,000.00) against each defendant, jointly & severally.

106.    Punitive damages in the amount of one hundred thousand dollars ($100,000.00) against

each defendant.

107.    A jury trial on all issues triable by jury.

108.    Plaintiff's costs in this suit.

109.    Any additional relief the court deems just, proper & equitable.

Respectfully submitted, this $\underline{20^{th}}$ day of November, 2023.

AMAURI RODRIGUEZ
THE PETITIONER, PRO-SE


BY: _Amauri Rodriguez_

Amauri Rodriguez
#427276
Osborn Correctional Institution
335 Bilton Road
P.O. Box 100
Somers, CT 06071

18

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged upon information & belief, &, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true & correct.

Executed at Somers, Connecticut on this _20th_ day of November 2023.

BY: _Amauri Rodriguez_

Amauri Rodriguez
#427276
Osborn Correctional Institution
335 Bilton Road
P.O. Box 100
Somers, CT 06071

19