## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMAURI RODRIGUEZ, | ) | CASE NO. 3:23-cv-1542 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL DOUGHERTY, *et al.*, | ) | MARCH 1, 2024 |
| *Defendants*. | ) | |

## <u>INITIAL REVIEW ORDER</u>

Kari A. Dooley, United States District Judge:

Plaintiff Amauri Rodriguez ("Rodriguez"), currently confined at Osborn Correctional Institution, filed this civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against nineteen defendants: Warden Daniel Dougherty,[1] Captain Batten, Lieutenant John Doe #1, Officers F. Saleh, Rodriguez, Acanto, and John Does #2–#8, Clinical Social Worker John Doe #9, and Registered Nurses Joshua Appuzo, Vivian Martell, Diane Campbell-Hooks, Marybeth Moure-Williams, and Henry Mushi. He brings a number of claims alleging violations of his constitutional and other rights and seeks declaratory relief and damages from all defendants in their individual and official capacities.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the

---

[1] The Court takes judicial notice of the public record on the Department of Correction ("DOC") website showing the correct spelling of the name Daniel Dougherty. *See Diaz v. Bowles*, 3:20-cv-997 (VAB), 2022 WL 2047241, at *1 n.1 (D. Conn. June 6, 2022) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)). The Clerk of the Court is directed to correct the name to "Dougherty" in the case caption.

truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also* Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On December 1, 2022, Rodriguez was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"). ECF No. 1 at ¶ 25. Between 7:00 p.m. and 11:00 p.m., Rodriguez made several requests to Officers Doe #7 and Doe #8 to call the mental health unit because he was in emotional distress after learning that his best friend had died in a motor vehicle accident. *Id.* at 5 ¶¶ 26–27. In response to each request, Rodriguez was told "they are on their way." *Id.* at ¶ 28.

At 7:00 a.m. on December 2, 2022, after not sleeping at all and in visible distress, Rodriguez asked Officers Saleh and Doe #6 to call mental health staff. *Id.* at 6 ¶ 29. Officer Saleh ignored Rodriguez's request and commented that he appeared intoxicated. *Id.* at 6 ¶ 30.

At about 10:00 a.m., Officer Rodriguez, Lieutenant Doe #1, and Officers Doe #2 and Doe #3 placed Rodriguez in handcuffs and escorted him to the restrictive housing unit ("RHU"). *Id.* at 6 ¶ 31. Rodriguez was placed in a cell and his handcuffs were removed through the cell door trap. *Id.* at 6 ¶ 32. These Defendants then conducted a strip search through the cell door by verbally ordering Rodriguez to remove various articles of clothing and inspecting the clothing. *Id.* at 6 ¶ 33. Lieutenant Doe #1 told Rodriguez that he would have to undergo urinalysis. *Id.* at 6 ¶ 34.

Rodriguez did not refuse but did ask to speak with mental health staff. *Id.* Rodriguez followed all commands during the strip search but did object when he was ordered to squat and cough a second time. *Id.* at 6 ¶ 35. Rodriguez was then handcuffed with his hands in front of him and left in the cell for about an hour. *Id.* at 6 ¶ 36. Each time an officer passed his cell, Rodriguez asked to speak to mental health staff and requested his mental health medications. *Id.* at 6 ¶ 37.

After about an hour, Defendants Batten, Rodriguez, Doe #4, Doe #5, and other officers returned to Rodriguez's cell. *Id.* at 7 ¶ 38. When Rodriguez refused to be handcuffed until he saw mental health staff, the cell door was opened, Defendant Batten sprayed Rodriguez with a chemical agent, and the door was shut. *Id.* at 7 ¶ 39. After a few minutes, a social worker came and spoke to Rodriguez. *Id.* at 7 ¶ 40. Rodriguez stated only that his eyes were burning and he could not focus. *Id.*

When the social worker left, Defendants Doe #4 and Doe #5 entered the cell and slammed Rodriguez against the wall. *Id.* at 7 ¶ 41. Defendants Doe #4 and Doe #5 then dragged Rodriguez into the corridor and slammed him face–first into the wall. *Id.* at 7 ¶ 42. While he was being removed from the cell, a Defendant stepped on his foot, injuring a bandaged open wound on his toe. *Id.* at 7 ¶ 43.

Defendant Batten ripped off Rodriguez's shorts and boxers leaving him standing naked in the corridor. *Id.* at 7 ¶ 44. Defendants Doe #4 and Doe #5 dragged Rodriguez to the shower and held his head under the water for twenty seconds which worsened the effects of the chemical agent. *Id.* at 8 ¶ 45. Defendants Doe #4 and Doe #5 then brought Rodriguez to the Behavior Observation Status ("BOS") cell and forced him to the bunk face-down with his hands cuffed in front of his body. *Id.* at 8 ¶ 46.

Defendants Doe #4, Doe #5, and other officers pinned Rodriguez down and punched him in the back of his head and torso. *Id.* at 8 ¶ 47. Defendant Officer Rodriguez recorded the incident, during which Rodriguez asked why he was being punched and stating that he was not resisting. *Id.* at 8 ¶ 48. The officers continued until Defendant Batten told them to stop, stating "that's enough." *Id.*

Rodriguez was then dressed in a Ferguson gown and placed in five-point restraints. *Id.* at 8 ¶ 49. His handcuffs and shackles were connected by a short chain which required him to stoop when standing. *Id.* at 8 ¶ 50. Rodriguez was left in the BOS cell until December 3 and did not receive wound care until December 5. *Id.* at 8 ¶ 51. On December 7, 2022, Rodriguez had a court trip; he was discharged from restrictive housing upon his return. *Id.* at 8 ¶ 52. Since this incident, Rodriguez has suffered from increased headaches, ear pain, nausea, and dizziness. *Id.* at 9 ¶ 54.

Although they provided treatment for other injuries and medical complaints, Defendants Appuzo, Martell, Campbell-Hooks, Moure-Williams, and Mushi did not acknowledge Rodriguez's verbal or written complaints relating to injuries suffered on December 2, 2022. *Id.* at 9 ¶¶ 57–58. After he was transferred to Osborn Correctional Institution in May 2023, he was diagnosed with PTSD related to the December 2, 2022 assault and has received treatment both at the facility and an outside hospital. *Id.* at 10 ¶¶ 61–63.

On July 9, 2023, Rodriguez requested a copy of the December 2, 2022 incident report under the Freedom of Information Act. *Id.* at 10 ¶ 66. On July 14, 2023, Defendant Acanto acknowledged the request and indicated that Rodriguez would be contacted in the "near future." *Id.* at 10 ¶ 67. On July 17, 2023, Rodriguez submitted a second request to Defendant Acanto, this time seeking disciplinary reports and all records from his time in restrictive housing between December 1 and 10 in addition to the incident report. *Id.* at 11 ¶ 68. Defendant Acanto responded that Rodriguez

needed to be more specific about the restrictive housing records but stated that the other documents would be included with his prior request. *Id.* at 11 ¶ 69. On July 23, 2023, Rodriguez submitted a third request seeking the tracking number of the video recording. *Id.* at 11 ¶ 70. Defendant Acanto responded that the request was forwarded to the central office and the information would be provided when it became available. *Id.* at 11 ¶ 71. Although Rodriguez was billed for 78 pages of documents, he received nothing and was told the documents were not available. *Id.* at 11 ¶¶ 72–74.

**Discussion**

Rodriguez asserts the following claims: (1) all defendants acted negligently, recklessly or carelessly; (2) Defendant Dougherty violated his First Amendment rights to redress grievances and freedom of speech and his Fourteenth Amendment rights to due process and equal protection of the laws by issuing a "gag order" regarding the December 2, 2022 incident and denying him access to the grievance process; (3) Defendant Batten authorized the use of force and used force himself in violation of the Eighth Amendment and conducted an unreasonable search when he forcibly removed Rodriguez's clothing and searched his person in violation of the Fourth Amendment; (4) Defendant Officer Rodriguez failed to report the use of excessive force in violation of the Eighth Amendment; (5) Defendants Saleh, Doe #6, Doe #7, Doe #8, and Doe #9 violated his Eighth Amendment rights; (6) Defendant Acanto's denial and delay of access to documents under the Freedom of Information procedures violated his First Amendment rights to redress grievances and freedom of speech and his Fourteenth Amendment rights to due process and equal protection of the laws; (7) Defendant Doe #1 used excessive force and excessively searched him in violation of the Eighth and Fourth Amendments; (8) Defendants Doe #2 and Doe #3 used excessive force in violation of the Eighth Amendment; (9) Defendants Doe #4 and

Doe #5 used excessive force and failed to report the use of excessive force in violation of the Eighth Amendment and excessively searched him in violation of the Fourth Amendment; and (10) Defendants Appuzo, Martell, Campbell-Hooks, Moure-Williams, and Mushi were deliberately indifferent to his medical needs from the December 2, 2022 incident in violation of the Eighth Amendment. Rodriguez also contends that various defendants violated several federal criminal statutes, namely, 18 U.S.C. §§ 241, 242, 373(a), and 1035.

Rodriguez was not a sentenced inmate at the time of the incidents underlying most of his claims. Department of Correction records[2] show that he was not sentenced until May 4, 2023. *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=427276 (last visited December 6, 2023). Thus, his claims for use of excessive force and deliberate indifference to mental health and medical needs are cognizable under the Fourteenth, and not the Eighth, Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates brought under the Eighth Amendment, while claims of pretrial detainees are brought under the Fourteenth Amendment).

*Excessive Force*

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court set forth the standard for assessing whether the force used by a prison official against a pretrial detainee was excessive under the Fourteenth Amendment. The Court held that "courts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind." *Id.* at 396. Thus, to state an excessive force claim against a prison official, "a pretrial

---

[2] The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

The Supreme Court has cautioned the district courts not to "mechanically" apply the objective reasonableness standard because "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The determination of reasonableness must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* The "court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in the judgement" of prison officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks, alterations, and citation omitted).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extend of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Rodriguez alleges several instances of use of excessive force: that Defendants Batten, Doe #4 and Doe #5 used excessive force against Rodriguez during the cell extraction, Defendants Doe #4 and Doe #5 used excessive force in the BOS cell, and Defendants Doe #1, Doe #2, and Doe #3 used excessive force when they handcuffed him and escorted him to RHU.

### Defendant Doe #1, Doe #2, and Doe #3

Rodriguez alleges only that Defendants Doe #1, Doe #2, and Doe #3 were involved in handcuffing him and escorting him to RHU. He does not allege that he suffered any injury as a

result of being placed in handcuffs or even that the handcuffs were tight. Thus, Rodriguez fails to state a plausible claim against these three defendants for use of excessive force. *See Ward v. Doe #3*, No. 22-cv-6497 (FPG), 2023 WL 3025218, at * (W.D.N.Y. Apr. 20, 2023) ("When considering the injury to a pretrial detainee, '[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.'") (citing cases). The excessive force claims against Defendants Doe #1, Doe #2, and Doe #3 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Defendants Doe #4 and Doe #5**

Rodriguez alleges that Defendants Doe #4 and Doe #5 slammed him against the wall in his cell and again, face-first, into the corridor wall. He also alleges that, when he was placed in the BOS cell, they assaulted him while he was restrained and not resisting. Rodriguez alleges that he did not physically resist the defendants at any time. Thus, based on the facts alleged, a factfinder could conclude that the use of force was objectively unreasonable. The excessive force claim will proceed against Defendants Doe #4 and Doe #5.

**Defendant Batten**

Rodriguez alleges that Defendant Batten used excessive force during the cell extraction by spraying him with a chemical agent and authorized both the use of force by Defendants Doe #4 and Doe #5 and its duration. Rodriguez alleges that he refused to be handcuffed until he spoke to a mental health staff member, after which statement, Defendant Batten sprayed him with a chemical agent. He also alleges that the social worker arrived shortly after the chemical agent was deployed. A reasonable inference from the facts alleged is that Defendant Batten made no effort to temper the force used. This excessive force claim against Defendant Batten will proceed for further development of the record.

Rodriguez also contends that Defendant Batten authorized the use of force in the BOS cell as he was present and was the person who determined that sufficient force had been used. As the Court has determined above that this excessive force claim should proceed against Defendants Doe #4 and Doe #5, it will proceed against Defendant Batten as well.

*Failure to Report*

Rodriguez alleges that Defendant Officer Rodriguez was operating the video camera during his escort to and placement in the BOS cell but contends that Defendant Officer Rodriguez did not report that other defendants had used excessive force. He also contends that Defendants Doe #4 and Doe #5 did not report their use of force.

Research reveals no constitutional duty for a correctional officer to report the use of excessive force by another. However, Department of Correction directives[3] provide that "[a]ll instances of . . . use of physical force to control inmates shall be documented to establish the identities of staff, inmates and others involved, and to describe the nature of the incident. . . ." Department of Correction Administrative Directive 6.5(12)(a). These reports "shall be completed by each employee involved in or observing the use of physical force incident" and attached to the incident report. *Id.* § 12(b) & (c).

Rodriguez contends that defendants Officer Rodriguez, Doe #4 and Doe #5 did not report their use of force. He also alleges, however, that he has been unable to obtain a copy of the incident report. Thus, he cannot know whether use of force reports by Defendants Doe #4 and Doe #5 are included. This claim against Defendants Doe #4 and Doe #5 is based on speculation. Nor does Rodriguez have a constitutional right to have such reports completed. *See Cooper v.*

---

[3] The Court may take judicial notice of prison directives and matters of public record which are available on the Department of Correction website. *See Giraldo v. Kessler.* 694 F.3d 161, 164 (2d Cir. 2012); *Mangiafico*, 471 F.3d at 398.

*Sheahan*, No. 12-cv-1227S (WMS), 2022 WL 2974029, at *8 (W.D.N.Y. July 27, 2022) (failure to follow prison rule or directive not a constitutional violation) (citing cases). The failure to report claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Excessive Search*

Rodriguez contends that he was subjected to excessive searches in violation of the Fourth Amendment by Defendants Batten, Doe #1, Doe #4, and Doe #5. He contends that Defendant Batten removed his boxers and searched his person while he was in the corridor, Defendant Doe #1 was present during the strip search in the RHU cell and ordered Rodriguez to undergo a urinalysis test, and Defendants Doe #4 and Doe #5 excessively searched him.

Prisoners retain a limited right to bodily privacy under the Fourth Amendment. Where an inmate "exhibits an actual subjective expectation of bodily privacy, and if the inmate challenges an isolated search as infringing on his or her right of bodily privacy," the courts assess the claim under the four-factor test for reasonableness set out in *Bell v. Wolfish*, 441 U.S. 520, 5 (1979), which requires the court to consider "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris v. Miller*, 818 F.3d 49, 62–63 (2d Cir. 2016). As the inmate bears the burden of showing that a search was unreasonable, "a plaintiff must 'plead facts sufficient to give rise to a plausible inference' that the search he challenges was unreasonable under the [*Bell*] standards." *Cox v. (DOCCS) NYS Dep't of Corr.*, No. 9:23-cv-57 (GLS/CFH), 2023 WL 3300496, at *5 (N.D.N.Y. May 8, 2023) (citations omitted).

**Strip Search in RHU Cell**

Rodriguez alleges that after he was placed in the RHU cell, he was required to remove his clothing and permit officers to conduct a visual strip search through the cell window. Defendants

Doe #1 and Batten were present during this search.

Strip searches, including visual body cavity searches, have been upheld as reasonable when they are related to a legitimate penological interest, even where there is no probable cause for the particular search. *Loving v. Morton*, No. 20-cv-11135 (KMK), 2022 WL 2971989, at *7 (S.D.N.Y. July 27, 2022) (citations omitted). In Connecticut, "[a] strip search of an inmate must be conducted 'upon initial placement in a specialized housing unit, to include . . . restrictive housing." *Holloway v. Department of Corr*. No. 3:11-cv-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013) (citing Department of Connecticut Administrative Directive 6.7).

Rodriguez alleges that he was strip searched upon arrival in RHU and the search was conducted in the privacy of his cell. Thus, the search is permissible and any claim against Defendants Doe #1 and Batten based on the initial strip search is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Urinalysis

Rodriguez alleges that Defendant Doe #1 told him he would need to undergo urinalysis, a procedure to which Rodriguez did not object. He does not allege whether this test was performed.

"The Supreme Court has held that a urinalysis constitutes a search within the meaning of the Fourth Amendment, . . . but to date, neither the Supreme Court nor the Second Circuit has held that non-random urinalyses of inmates not based on reasonable suspicion are unreasonable under the Fourth Amendment." *Holmes v. Fischer*, No. 90-cv-00829S (LGF), 2016 WL 552962, at *8 (W.D.N.Y. Feb. 10, 2016). However, such testing done as harassment can constitute an illegal search. *Id.*

As Rodriguez does not allege that he was actually required to undergo urinalysis, *i.e.*, that

the search occurred, this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915a(B)(1).

### Strip Search in Corridor

Rodriguez contends that after being forcibly removed from the RHU cell, Defendant Batten ripped off his shorts and boxers and excessively searched his person in the corridor. In his statement of facts, however, he alleges only that Defendant Batten ripped off his shorts and boxers, leaving him standing naked in the corridor. As he alleges no facts describing any search, the Fourth Amendment claim against Defendant Batten is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Search in BOS Cell

Finally, Rodriguez contends that Defendants Doe #4 and Doe #5 excessively searched him in the BOS cell. However, he alleges no facts referencing this search. Absent such facts, Rodriguez fails to state a plausible Fourth Amendment claims against Defendants Doe #4 and Doe #5. The Fourth Amendment claims against Defendants Doe #4 and Doe #5 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Deliberate Indifference to Medical and Mental Health Needs*

To state a Fourteenth Amendment claim for deliberate indifference to serious medical or mental health needs, a detainee must first show that his medical or mental health need was "sufficiently serious" so as to trigger Constitutional protection. *See Salahuddin v. Goord*, 467 F.3d 263 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* A "sufficiently serious" deprivation can exist if the detainee suffers from an urgent medical condition that can cause

death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2003). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). This first part of the deliberate indifference standard is the same under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 35.

A detainee must also establish a defendant's *mens rea*. "[T]he pretrial detainee must prove that the defendant–official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant–official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Under the Fourteenth Amendment, the defendant's conduct is viewed objectively. However, negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently). Distinguishing between negligent and reckless medical care is difficult when the court considers only the allegations in the complaint. *See King v. Falco*, No. 16-cv-6315 (VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (citations omitted). Courts frequently consider the "degree of risk associated with the negligent treatment," and have found

reckless conduct where the plaintiff did not receive treatment for a documented injury. *Id.* (citing cases).

### Mental Health Needs

Defendants Salah, Doe #6, Doe #7, and Doe #8 are correctional officers. Rodriguez alleges that Defendant Officers Doe #7 and Doe #8 failed to ensure that Rodriguez saw mental health staff in response to his several requests between 7:00 p.m. and 11:00 p.m. on December 1, 2022, and that Defendants Salah and Doe #6 ignored one request to call mental health staff in the morning of December 2, 2022. He does not allege that he has any other mental health needs.

Rodriguez alleges that he wanted to speak to mental health staff because he was distressed after hearing of his friend's death. He has not alleged facts showing a sufficiently serious mental health need. He does not describe any further injury or harm from the failure to speak to mental health staff. Further, the allegations suggest that Defendants Doe #7 and Doe #8 contacted the mental health unit because they told Rodriguez that mental health staff was coming. Any delay in not following up on Rodriguez's request for mental health staff appears to be negligent, not intentional. In addition, Rodriguez alleges that Defendants Salah and Doe #6 ignored one request to speak to mental health staff but does not allege that he gave them a reason. Rodriguez alleges no facts suggesting that any Defendant—Saleh, Doe #6, Doe #7, or Doe #8—knew or should have known of any excessive risk to his health or safety from failure to ensure that Rodriguez spoke to mental health staff about the death of his friend. The claims against Defendants Saleh, Doe #6, Doe #7, and Doe #8 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Rodriguez names Clinical Social Worker John Doe #9 as a defendant. The Court assumes that he is the social worker who came to Rodriguez's RHU cell. Defendant Doe #9 left when

Rodriguez stated only that he could not focus because he had been sprayed with a chemical agent. Again, Rodriguez has not identified any harm suffered from the inability to speak to mental health staff about his friend's death. The actions of Defendant Doe #9 appear to be, at most, negligence, which is not cognizable under § 1983. The claim against Defendant Doe #9 also is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Medical Needs

Rodriguez alleges that Defendant Nurses Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi failed to acknowledge or provide treatment in response to his many requests for treatment of the injuries suffered on December 2, 2022. As Rodriguez alleges that he received treatment for these injuries both at the facility to which he was transferred and an outside hospital, the Court will assume, for purposes of initial review only, that Rodriguez had a serious medical need.

Rodriguez alleges that he requested treatment from these nurses both orally and in writing and that no treatment was provided. Based on these allegations, the Court cannot determine whether their conduct was negligent, reckless, or perhaps intentional. The deliberate indifference to medical needs claims will proceed against all five nurses for further development of the record.

### *First and Fourteenth Amendment Rights*

Rodriguez contends that Defendant Dougherty violated his First Amendment rights to redress grievances and to freedom of speech and his right to due process by issuing a gag order and denying him access to the grievance process and that Defendant Acanto violated those same rights by denying and delaying access to documents under the Freedom of Information procedures.

### Grievance Procedures

Rodriguez has no First Amendment or due process right to grievance procedures. "Prisoners have a constitutional right of access to the court that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-cv-1570 (CSH), 2018 WL 691714, at \*16 (D. Conn. Feb. 2, 2018) (citation omitted). The Supreme Court has never held, however, that the Constitution requires state prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. Appx. 11 (2d Cir. 2018), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. However, neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated procedures." *Id.* at 13 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and citation omitted). In addition, grievance restrictions do not violate First Amendment rights. *See Lopez v. McGill*, No. 3:08-cv-1931(CSH), 2009 WL 179787, at \*6 (D. Conn. Jan. 21, 2009) ("plaintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law"). As Rodriguez has no constitutional right to grievance procedure or to have his grievances properly handled, his First and Fourteenth Amendment claims against Defendants Dougherty and Acanto for denying access to grievance procedures fail as a matter of law.

### Gag Order

Rodriguez alleges in conclusory fashion that Defendant Warden Dougherty ordered the other defendants not to speak about the December 2, 2022 incident or acknowledge his

complaints about the injuries he allegedly suffered. Rodriguez, however, alleges no facts to support this speculation. Conclusory allegations are not sufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678. Accordingly, the claim against Defendant Warden Dougherty is dismissed.

### Access to Documents

Underlying his claims against Defendant Acanto is Rodriguez's allegation that Defendant Acanto failed to provide documents requested under the Freedom of Information procedures at the prison. Although Rodriguez does not list this as a separate claim, it would not be cognizable in this action even if included.

A violation of the Connecticut Freedom of Information Act is not a federal constitutional violation. *See Book v. Lauretti*, No. 3:20-cv-1381 (JCH), 2022 WL 4944399, at *7 n.8 (D. Conn. Oct. 3, 2022) (citing *McBurney v. Young*, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws.")). Rodriguez may pursue any claims for violation of state Freedom of Information laws in state court or before the Freedom of Information Commission. Nor has the lack of these documents interfered with Rodriguez's right of access to the courts as he has filed this action.

### Equal Protection

Rodriguez references the Equal Protection Clause in his claims against Defendants Dougherty and Acanto. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injury a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627

F.2d 606, 609–10 (2d Cir. 1980) (emphasis omitted)). Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). Thus, to state a traditional equal protection claim, the plaintiff must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209 (JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

Rodriguez does not identify any other inmate experiencing the same conditions who was treated differently. Thus, there is no factual basis for an equal protection claim. Any equal protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Federal Criminal Statutes*

Rodriguez alleges that various defendants violated his rights under several federal criminal statutes. Federal criminal statutes do not provide a private right of action. *See Sheehy v. Brown*, 335 F. Appx. 102, 104 (2d Cir. 2009) (summary order) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action."); *El v. O'Brien*, No. 12-cv-1793 (DLI)(JMA), 2012 WL 2367096, at *2 (E.D.N.Y. June 20, 2012) (holding that 18 U.S.C. §373 does not provide a private right of action); *see also Adkins v. Benard*, No. 8:20-cv-2627 (SDM/CPT), 2021 WL 11645461, at *5 (M.D. Fla. Nov. 30, 2021) (collecting cases holding there is no private right of action under federal statutes including 18 U.S.C. §§ 241, 242, and 373); *Watson v. Community Property Management*, No. 19-2918, 2019 WL 3714529, at *3 (E.D. Pa. Aug. 6, 2019) ("Section 1035 which makes it a crime to falsify, conceal, cover up or make a materially false or fraudulent statement in connection with

the delivery or payment for health care benefits, does not create a private right of action."
(citations omitted)). All claims for violation of federal criminal statutes are dismissed pursuant to
28 U.S.C. § 1915A(b)(1).

*Negligence*

In his first two claims, Rodriguez mentions only negligent, careless, or reckless conduct
of defendants. Defendants are all state employees. Pursuant to state law, state employees cannot
be held liable for damages in their individual capacities for claims based solely on negligence.
Specifically, Connecticut General Statutes § 4-165 provides that "[n]o state officer or employee
shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the
discharge of his or her duties or within the scope of his or her employment."

The Connecticut Supreme Court has not "definitively determined the meaning of wanton,
reckless or malicious as used in § 4-165." *Martin v. Brady*, 261 Conn. 372, 379 (2002). In the
common law context, however, the Connecticut Supreme Court has stated:

> In order to establish that the defendants' conduct was wanton, reckless, wilful,
> intentional and malicious, the plaintiff must prove, on the part of the defendant,
> the existence of a state of consciousness with reference to the consequences of
> one's act. . . . [Such conduct] is more than negligence, more than gross
> negligence. . . . [I]n order to infer it, there must be something more than a failure
> to exercise a reasonable degree of watchfulness to avoid danger to others or to
> take reasonable precautions to avoid injury to them. . . . It is such conduct as
> indicates a reckless disregard of the just rights or safety of others or of the
> consequences of the action. . . . [In sum, such] conduct tends to take on the aspect
> of highly unreasonable conduct, involving an extreme departure from ordinary
> care, in a situation where a high degree of danger is apparent.

*Id.* (citations and internal quotation marks omitted).

Although Rodriguez uses the word "reckless," its use in combination with the words
negligent and careless does not appear to warrant the exception to section 4-165. The alleged
actions were taken within the scope of the defendants' employment. Thus, all defendants are

statutorily immune from any claim for damages based solely on negligence. Plaintiff's claims for negligent, careless, or reckless conduct are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

*Official Capacity Damages Claims*

Rodriguez names all defendants in their individual and official capacities. However, he may obtain damages from the defendants only in their individual capacities. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor does Rodriguez allege facts suggesting that the state has waived immunity in this case. Thus, as all defendants are state officials, Rodriguez cannot obtain damages from any defendant in his official capacity. All claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

*Declaratory Relief*

Rodriguez also includes a request for declaratory relief. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-2291 (KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id.* As Rodriguez's request for declaratory relief concerns a past

incident, any request for declaratory relief would not be cognizable. The request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

All claims against Defendants Dougherty, Acanto, Saleh, Doe #2, Doe #3, Doe #6, Doe #7, Doe #8, and Doe #9; all claims for failure to report the use of excessive force; the excessive search claims against Defendants Batten, Doe #1, Doe #4, and Doe #5; the general negligence claims asserted against all Defendants; all claims for violations of federal criminal statutes; the request for declaratory relief; and the request for damages from any Defendant in his or her official capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

The case will proceed on the excessive force claims described above against Defendants Batten, Doe #4, and Doe #5 in their individual capacities; and the claims for deliberate indifference to medical needs against Defendants Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi in their individual capacities.

Rodriguez has two options as to how to proceed in response to this Initial Review Order:

(1) If Rodriguez wishes to proceed immediately on the claims against Defendants Batten, Doe #4, Doe #5, Appuzo, Martel, Campbell-Hook, Moure-Williams, and Mushi and only as set forth above, he may do so without further delay. If Rodriguez selects this option, he shall file a notice on the docket by April 2, 2024 informing the Court that he elects to proceed with service as to the claims listed above. The Court will then begin the effort to serve process on the listed Defendants.

(2)  Alternatively, if Rodriguez wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed without prejudice to attempt to state a viable claim, he may file an Amended Complaint by April 2, 2024. An Amended Complaint, if filed,

will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Rodriguez elects to file an Amended Complaint, the original Complaint addressed in this Initial Review Order will not proceed to service of process on any Defendant.

If the Court receives no response from Rodriguez by April 2, 2024, the Court will presume that Rodriguez wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Rodriguez will have to show good cause if he seeks to amend the complaint in the future.

**Change of Address**. If Rodriguez changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court. **FAILURE TO DO SO MAY RESULT IN DISMISSAL OF THE CASE**. Rodriguez must give notice of a new address even if he is incarcerated. Rodriguez should write PLEAS NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Rodriguez has more than one pending case, he should indicate all the case numbers in the notification of change of address. Rodriguez should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of March 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE