## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMAURI RODRIGUEZ, | ) | CASE NO. 3:23-cv-1542 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL DOUGHERTY, *et al.*, | ) | APRIL 29, 2024 |
| *Defendants*. | ) | |

### INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

Kari A. Dooley, United States District Judge:

Plaintiff Amauri Rodriguez ("Rodriguez"), currently confined at Osborn Correctional Institution, filed this civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983. On March 1, 2024, the Court issued an Initial Review Order dismissing some claims and affording Rodriguez the opportunity to file an Amended Complaint to correct deficiencies identified therein. Rodriguez has now filed an Amended Complaint naming fourteen defendants: Captain Batten, Officers Rodriguez, F. Saleh, and John Does #1–#3, Lieutenant John Doe #4, Officers John Doe #5 and #6, Registered Nurses Joshua Appuzo, Vivian Martell, Diane Campbell-Hooks, Marybeth Moure-Williams, and Henry Mushi. He brings a number of claims alleging violations of his constitutional and other rights and seeks declaratory relief and damages from all defendants in their individual capacities.

**Standard of Review**

Under § 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also* Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On December 1, 2022, Rodriguez was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"). ECF No. 15 at ¶ 19. Between 7:00 p.m. and 11:00 p.m., Rodriguez made several requests to Defendants Doe #1 and Doe #2 to call the mental health unit because he was in emotional distress after learning that his best friend had died in a motor vehicle accident. *Id.* at 4 ¶¶ 20–21. In response to each request, Rodriguez was told "they are on their way." *Id.* at ¶ 21. He does not believe, however, that they ever called the mental health unit. *Id.* at ¶ 22.

At 7:00 a.m. on December 2, 2022, after not sleeping and engaging in "maladaptive coping mechanisms," *id.* at ¶ 23, Rodriguez asked Officers Saleh and Doe #3 to call mental health staff. *Id.* at ¶ 24. Officer Saleh ignored Rodriguez's request and commented that he appeared intoxicated. *Id.* at 5 ¶ 25.

At about 10:00 a.m., Defendant Officer Rodriguez, Defendant Doe #4, and two other officers placed Rodriguez in handcuffs and escorted him to the restrictive housing unit ("RHU"). *Id.* at ¶ 26. Rodriguez told Defendant Doe #4 about his bereavement issues and requested mental health treatment but was ignored. *Id.* at ¶ 27. Rodriguez was placed in a cell and his handcuffs were removed through the cell door trap. *Id.* at ¶ 28. The Defendants then conducted a visual strip

search through the cell door by verbally ordering Rodriguez to remove various articles of clothing and inspecting the clothing. *Id.* at ¶ 29. Defendant Doe #4 told Rodriguez that he would have to undergo urinalysis. *Id.* at ¶ 30. Rodriguez did not refuse but did ask to speak with mental health staff. *Id.* at ¶ 31. Rodriguez followed all commands during the strip search but did object when he was ordered to squat and cough a second time. *Id.* at 6 ¶ 32. Rodriguez's clothing was returned and left handcuffed with his hands in front and left in the cell for about an hour. *Id.* at ¶ 34. Each time an officer passed his cell, Rodriguez asked to speak to mental health staff and requested his mental health medications. *Id.* at ¶ 35.

After an hour, Defendants Batten, Officer Rodriguez, Doe #5, Doe #6, and other officers returned to Rodriguez's cell. *Id.* at ¶ 36. When Rodriguez refused to be handcuffed until he saw mental health staff, the cell door was opened, Defendant Batten sprayed Rodriguez with a chemical agent, and the door was shut. *Id.* at ¶ 37. After a few minutes, a social worker came and spoke to Rodriguez. *Id.* at 7 ¶ 39. Rodriguez stated only that his eyes were burning and he could not focus. *Id.*

When the social worker left, Defendants Doe #5 and Doe #6 entered the cell and slammed Rodriguez against the wall. *Id.* at ¶ 40. Defendants Doe #5 and Doe #6 then dragged Rodriguez into the corridor and slammed him face-first into the wall. *Id.* at ¶ 41. While he was being removed from the cell, Defendant Doe #5 stepped on his foot, injuring a bandaged open wound on his toe. *Id.* at ¶ 42.

While Defendants Doe #5 and Doe #6 held him, Defendant Batten ripped off Rodriguez's shorts and boxers leaving him standing naked in the corridor while he searched Rodriguez again. *Id.* at ¶ 43. Defendants Doe #5 and Doe #6 dragged Rodriguez to the shower and held his head under the water for twenty seconds which worsened the effects of the chemical agent. *Id.* at 7–8

¶¶ 44–45. Defendants Doe #5 and Doe #6 then brought Rodriguez to the Behavior Observation Status ("BOS") cell and forced him to the bunk face-down with his hands cuffed in front of his body. *Id.* at 8 ¶ 46.

Defendants Doe #5, Doe #6, and other officers pinned Rodriguez down and punched him in the back of his head and torso. *Id.* at ¶ 47. Defendants Batten, Doe #5, and Doe #6 made no effort to temper the amount of force used. *Id.* at ¶ 48. Defendant Officer Rodriguez recorded the incident, during which Rodriguez asked why he was being punched and stating that he was not resisting. *Id.* at ¶ 49. The officers continued for several minutes until Defendant Batten told them to stop, stating "that's enough." *Id.*

Rodriguez was dressed in a Ferguson gown and placed in five-point restraints. *Id.* at ¶ 50. His handcuffs and shackles were connected by a short chain which required him to stoop when standing. *Id.* at ¶ 51. Rodriguez was left in five-point restraints until 7:00 p.m. on December 3, 2022, and did not receive wound care until December 5, 2022. *Id.* at 9 ¶¶ 52–53. He was released from the BOS cell on December 5, 2022 to a regular RHU cell and issued standard clothing. *Id.* at ¶ 54. Beginning on December 2, 2022, Rodriguez complained to correctional staff that his head hurt and requested medical attention for the injuries from the assault but was ignored. *Id.* at ¶ 55.

On December 7, 2022, Rodriguez had a court trip; he was discharged from restrictive housing upon his return. *Id.* at ¶ 56. Since this incident, Rodriguez has suffered from increased headaches, ear pain, nausea, and dizziness. *Id.* at ¶ 58.

Although they provided treatment for other injuries and medical complaints, Defendants Appuzo, Martell, Campbell-Hooks, Moure-Williams, and Mushi did not acknowledge Rodriguez's verbal or written complaints relating to injuries suffered on December 2, 2022. *Id.* at 10 ¶ 60. After he was transferred to Osborn Correctional Institution in May 2023, he was diagnosed

with PTSD related to the December 2, 2022 assault and has received treatment both at the facility and an outside hospital. *Id.* at ¶¶ 64–65.

**Discussion**

Rodriguez asserts the following claims: (1) Defendant Batten used excessive force, was deliberately indifferent to mental health needs, performed an unreasonable search, committed deliberate infliction of emotional distress and assault and battery, violated his Fourteenth Amendment due process and equal protection rights, and conducted an unreasonable search in violation of the Fourth Amendment; (2) Defendant Officer Rodriguez was deliberately indifferent to mental health needs and , committed assault and battery, in violation of his Fourteenth Amendment due process and equal protection rights, and conducted an unreasonable search in violation of the Fourth Amendment; (3) Defendants Saleh, Doe #1, Doe #2, and Doe #3 were deliberately indifferent to mental health needs and deliberately inflicted emotional distress, in violation of his Fourteenth Amendment due process and equal protection rights; (4) Defendant Doe #4 deliberately inflicted emotional distress, was deliberately indifferent to mental health needs, and harassed and unreasonably searched him in violation of his Fourth and Fourteenth Amendment rights; (5) Defendants Doe #5 and Doe #6 used of excessive force, deliberately inflicted emotional distress, were deliberately indifferent to mental health needs, committed assault and battery, all in violation of his Fouorth and Fourteenth Amendment rights. and (6) Defendants Appuzo, Martell, Moure-Williams, Campbell-Hooks, and Mushi deliberately inflicted emotional distress, were deliberately indifferent to medical needs, willfully denied medical care, were negligent, falsified records, in violation of his Fourteenth Amendment rights.

Rodriguez also alleges that all defendants acted wantonly, willfully, intentionally, maliciously, recklessly, negligently, or carelessly, were deliberately indifferent to his medical

and mental health needs, intentionally inflicted emotional distress, committed harassment, assault, and battery, thereby causing various injuries. *Id.* at 12 ¶¶ 75–76. These paragraphs, however, appear to be statements of his injuries and not specific claims. Although Rodriguez used descriptive language suggesting claims arising under state law, he identifies his claims only as violating his rights under the Fourth and Fourteenth Amendments. The Court does not consider the Amended Complaint to assert supplemental state law claims.[1]

*Excessive Force*

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court set forth the standard for assessing whether the force used by a prison official against a pretrial detainee was excessive under the Fourteenth Amendment. The Court held that "courts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind." *Id.* at 396. Thus, to state an excessive force claim against a prison official, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

The Supreme Court has cautioned the district courts not to "mechanically" apply the objective reasonableness standard because "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The determination of reasonableness must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* The "court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained," appropriately

---

[1] The mere mention of a claim is not sufficient to state a claim for relief. *See Calhoun v. Quiros*, No. 3:23-cv-00715 (SVN), 2023 WL 8618745, at *4 (Dec. 13, 2023) (citing *Monger v. Connecticut Dep't of Transp.*, No 3:17-cv-205 (JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 22, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief may be granted)).

deferring to "policies and practices that in the judgement" of prison officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks, alterations, and citation omitted).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extend of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Rodriguez alleges several instances of use of excessive force: that Defendants Batten, Doe #5, and Doe #6 used excessive force during the cell extraction, and Defendants Doe #5 and Doe #6 used excessive force in the BOS cell.

Rodriguez alleges that Defendants Doe #5 and Doe #6 slammed him against the wall in his cell and again, face-first, into the corridor wall. He also alleges that when he was placed in the BOS cell, they assaulted him while he was restrained and not resisting. Rodriguez alleges that he did not physically resist these Defendants at any time. Thus, based on the facts alleged, it appears that the use of force was objectively unreasonable. The excessive force claim will proceed against Defendant Doe #5 and Doe #6.

Rodriguez also alleges that Defendant Batten used excessive force during the cell extraction by spraying him with a chemical agent and authorized both the use of force by Defendants Doe #5 and Doe #6 and its duration. Rodriguez alleges that he refused to be handcuffed until he spoke to a mental health staff member, and after such statement, Defendant Batten sprayed him with a chemical agent. He also alleges that the social worker arrived shortly after the chemical agent was deployed. A reasonable inference from the facts alleged is that Defendant Batten made no effort to temper the force used. This excessive force claim against

Defendant Batten will proceed for further development of the record.

Rodriguez also contends that Defendant Batten authorized the use of force in the BOS cell as he was present and was the person who determined that sufficient force had been used. Because the Court has determined above that this excessive force claim should proceed against Defendants Doe #5 and Doe #6, it will proceed against Defendant Batten as well.

*Failure to Report*

Rodriguez alleges only that Defendant Officer Rodriguez was operating the video camera during his escort to and placement in the BOS cell. The Court assumes that Rodriguez is asserting a claim for failure to prevent the use of excessive force.

To state a claim for failure to protect from harm, Rodriguez must show that the use of force by Defendants Batten, Doe #5, and Doe #6 was sufficiently serious to implicate a deprivation of the right to due process and that the officers "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-officer knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendants acted recklessly or intentionally, not merely negligently).

Officer Rodriguez did not intervene to prevent the use of excessive force. It is not clear how long the incidents lasted, whether he had an opportunity to intervene, and how the presence of a supervisor affected his ability to intervene. The claim will proceed against Defendant Officer Rodriguez for further development of the record.

*Excessive Search*

Rodriguez contends that he was subjected to excessive searches in violation of the Fourth

Amendment. He contends that Defendant Batten removed his boxers and searched his person while he was in the corridor while Defendants Doe #5 and Doe #6 held his arms. He also alleges that Defendant Doe #4 conducted the visual body cavity search in the RHU cell while Defendant Officer Rodriguez and two unidentified officers stood by and ordered Rodriguez to undergo a urinalysis test which never occurred.

Prisoners retain a limited right to bodily privacy under the Fourth Amendment. Where an inmate "exhibits an actual subjective expectation of bodily privacy, and if the inmate challenges an isolated search as infringing on his or her right of bodily privacy," courts assess the claim under the four-factor test for reasonableness set out in *Bell v. Wolfish*, 441 U.S. 520, 5 (1979), which requires the Court to consider "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris v. Miller*, 818 F.3d 49, 62–63 (2d Cir. 2016). As the inmate bears the burden of showing that a search was unreasonable, "a plaintiff must 'plead facts sufficient to give rise to a plausible inference' that the search he challenges was unreasonable under the [*Bell*] standards." *Cox v. (DOCCS) NYS Dep't of Corr.*, 673 F. Supp. 3d 174, 185 (N.D.N.Y. 2023) (citations omitted).

### Strip Search in RHU Cell

Rodriguez alleges that after he was placed in the RHU cell, he was required to remove his clothing and permit officers to conduct a visual strip search through the cell window. Defendant Batten and Defendant Officer Rodriguez were present during this search.

Strip searches, including visual body cavity searches, have been upheld as reasonable when they are related to a legitimate penological interest, even where there is no probable cause for the particular search. *Loving v. Morton*, No. 20-cv-11135 (KMK), 2022 WL 2971989, at *7 (S.D.N.Y. July 27, 2022) (citations omitted). In Connecticut, "[a] strip search of an inmate must

be conducted 'upon initial placement in a specialized housing unit, to include . . . restrictive housing." *Holloway v. Department of Corr*. No. 3:11-cv-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013) (citing Department of Connecticut Administrative Directive 6.7).

Rodriguez alleges that he was strip searched upon arrival in RHU and the search was conducted in the privacy of his cell. Thus, the search is permissible and any claim against Defendant Doe #4 and Defendant Officer Rodriguez based on the initial strip search is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Urinalysis

Rodriguez alleges that Defendant Doe #4 told him he would need to undergo urinalysis, a procedure to which Rodriguez did not object. The test was never performed. Because the test was not performed, there is no factual basis for a Fourth Amendment claim.

### Strip Search in Corridor

Rodriguez contends that after being forcibly removed from the RHU cell, Defendant Batten ripped off his shorts and boxers and excessively searched his person in the corridor while he was restrained by Defendants Doe #5 and Doe #6. Although Rodriguez does not allege any specific facts regarding this search, the Court will permit this claim to proceed against Defendants Batten, Doe #5, and Doe #6.

### *Deliberate Indifference to Medical and Mental Health Needs*

To demonstrate the required constitutional deprivation to state a Fourteenth Amendment claim for deliberate indifference to serious medical or mental health needs, a detainee must first show that his medical or mental health need was "sufficiently serious" so as to trigger Constitutional protection. *See Salahuddin v. Goord*, 467 F.3d 263 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how

the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* A "sufficiently serious" deprivation can exist if the detainee suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2003). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). This first part of the deliberate indifference standard is the same under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 35.

A detainee must also establish a defendant's *mens rea*. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Under the Fourteenth Amendment, the defendant's conduct is viewed objectively. However, negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently). Distinguishing between negligent and reckless medical care is difficult when the court considers only the allegations in the complaint. *See King v. Falco*, No. 16 CV

6315 (VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (citations omitted). Courts frequently consider the "degree of risk associated with the negligent treatment," and have found reckless conduct where the plaintiff did not receive treatment for a documented injury. *Id.* (citing cases).

### Mental Health Needs

Rodriguez alleges that Defendants Saleh, Doe #1, Doe #2, Doe #3, and Doe #4 failed to ensure that Rodriguez saw mental health staff in response to his several requests on December 1 and 2, 2022. Rodriguez alleges that he wanted to speak to mental health staff because he was distressed after hearing of his friend's death.

On Initial Review of the Complaint, the Court determined that Rodriguez had not alleged facts showing that his grief was a sufficiently serious mental health need. The Court noted that he did not describe any further injury or harm from the failure to speak to mental health staff and that he alleged that the officers told him that mental health staff was coming. Thus, the Court dismissed this claim as setting forth negligent, not intentional, conduct. Rodriguez now alleges that he engaged in "maladaptive coping mechanisms," ECF No. 15 at 4 ¶ 23, and experienced emotional distress. He also alleges that he believes that no defendant actually called the mental health unit to obtain treatment for him.

Rodriguez still has not alleged facts showing that Defendants Saleh, Doe #1, Doe #2, Doe #3, and Doe #4 knew or should have known that his grief posed an excessive risk to his health or safety. He alleged that he engaged in maladaptive coping mechanisms but does not state what he did or that any of these defendants were aware of his actions. The claims for deliberate indifference to mental health needs is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Medical Needs

Rodriguez alleges that Defendants Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi failed to acknowledge or provide treatment in response to his many requests for treatment of the injuries suffered on December 2, 2022. As Rodriguez alleges that he received treatment for these injuries both at the facility to which he was transferred and an outside hospital, the Court assumed, for purposes of Initial Review only, that Rodriguez had a serious medical need.

Rodriguez alleges here, as he did in the original Complaint, that he requested treatment from these nurses both orally and in writing and no treatment was provided. Based on these allegations, the Court still cannot determine whether their conduct was negligent or reckless. The deliberate indifference to medical needs claims will proceed against all five nurses for further development of the record.

*Equal Protection*

Rodriguez references the Equal Protection Clause of the Fourteenth Amendment in various claims. The Court dismissed all Equal Protection claims on Initial Review of the Complaint because Rodriguez failed to identify any other inmate experiencing the same conditions who was treated differently. He still has not done so. Thus, any Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Declaratory Relief*

The Court dismissed Rodriguez's claim for declaratory relief on Initial Review of the complaint. However, he still includes a request for declaratory relief based on past actions. Because the Court has already held that such claims are not cognizable, the request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

The Fourteenth Amendment claims for deliberate indifference to mental health needs against Defendants Saleh, Doe #1, Doe #2, Doe #3, and Doe #4; the Fourth Amendment unreasonable search claim against Defendant Doe #4 and Defendant Officer Rodriguez regarding the visual body cavity search conducted through the cell door; the Fourth Amendment unreasonable search claim regarding urinalysis; any Fourteenth Amendment Equal Protection claims; and the request for declaratory relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

The case will proceed on the Fourteenth Amendment excessive force claims against Defendants Batten, Doe #5, and Doe #6; the Fourth Amendment excessive search claim against Defendants Batten, Doe #5, and Doe #6 regarding the search in the corridor; the Fourteenth Amendment failure to intercede and protect claim against Defendant Officer Rodriguez; and the Fourteenth Amendment claims for deliberate indifference to medical needs against Defendants Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi.

The Court enters the following additional orders.

(1)     The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Defendants Batten, Rodriguez, Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided by May 20, 2024, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     The Clerk shall send Plaintiff a copy of this Order.

(3)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     Defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited in the Initial Review Order. They also may include all additional defenses permitted by the Federal Rules of Civil Procedure.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by November 29, 2024. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by December 29, 2024.

(7)     Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or if the response is not timely filed, the dispositive motion can be granted absent objection.

(8)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. **FAILURE TO DO SO MAY RESULT IN DISMISSAL OF THE CASE**. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should include all the case numbers in the notice of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As

local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail. In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

(10)    The Court cannot affect service on Defendants John Doe #5 and John Doe #6 without their full names and current work addresses. Plaintiff is directed to obtain this information through discovery and file a notice identifying these defendants. Once the defendants are identified, the Court will proceed to serve them with the amended complaint. Failure to provide this information within 90 days (July 29, 2024) shall result in dismissal of all claims against the unidentified Doe Defendants.

(11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of April 2024.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE