UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMAURI RODRIGUEZ,<br>    *Plaintiff*, | CASE NO. 3:23-CV-1542 (KAD) |
| v. | |
| DANIEL DOHERTY, *et al.*,<br>    *Defendants*. | SEPTEMBER 29, 2025 |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 38)

Kari A. Dooley, United States District Judge:

Plaintiff Amauri Rodriguez filed this civil rights action under 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee at MacDougall-Walker Correctional Institution ("MacDougall") in the custody of the Connecticut Department of Corrections ("DOC").[1] Following the Court's initial review of the Amended Complaint, the following causes of action remain against Defendants in their individual capacities: (1) excessive force and unlawful search claims against Defendants Captain Batten, Correctional Officer Grasso (formerly "John Doe #5"), and Correctional Officer Carlson (formerly "John Doe #6")[2]; (2) a

---

[1] On June 20, 2024, Plaintiff updated his address with the Court, indicating that he was residing at the Roger Sherman House, a halfway house in New Haven, Connecticut. *See* ECF No. 27. The Connecticut Department of Corrections Inmate Information website reflects that, currently, Plaintiff is serving a sentence of special parole until May 6, 2030. *See* CT Department of Correction, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=427276 (last visited Sept. 25, 2025); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The Court may "take judicial notice of relevant matters of public record"). It is unclear whether Plaintiff still resides at the Roger Sherman House, or indeed, if he is still pursuing the claims at issue in this case. As indicated herein, Plaintiff did not respond to the MSJ Defendants' Motion for Summary Judgment.

[2] Following initial review of the Amended Complaint, all Defendants were served, except for John Does #5 and #6, because at the time, they had not yet been identified by Plaintiff. Plaintiff subsequently identified John Doe #5 as Correctional Officer Grasso and John Doe #6 as Correctional Officer Carlson. *See* ECF No. 20. However, these Defendants were inadvertently not served with the Amended Complaint, and have not been joined to this case. Notwithstanding, for the reasons set forth herein, the Court finds that the claims against them are subject to dismissal for the same reason the MSJ Defendants are entitled to summary judgment – Plaintiff's failure to exhaust his administrative remedies.

failure to intervene claim against Defendant Officer Rodriguez; and (3) a deliberate indifference to medical needs claim against Defendants Registered Nurse ("RN") Joshua Appuzo, RN Vivian Martell, RN Diane Campbell-Hook, RN Marybeth Moure-Williams, and RN Henry Mushi (collectively, the "Nurse Defendants"). *See* Initial Review Order ("IRO"), ECF No. 18 at 14. On February 27, 2025, Defendants Batten, Rodriguez, Appuzo, Martell, Campbell-Hook, Moure-Williams, and Mushi (collectively, the "MSJ Defendants") filed the instant Motion for Summary Judgment. For the reasons set forth herein, the Motion for Summary Judgment is **GRANTED**.

**Facts**[3]

The relevant facts set forth herein are taken from the MSJ Defendants' unopposed Local Rule 56(a)1 Statement ("Defs. 56(a)1," ECF No. 38-2), as well as the MSJ Defendants' supporting exhibits, including manually filed video exhibits depicting the events of December 2, 2022, and additional deposition testimony submitted on March 1, 2025. *See* ECF Nos 38-3–38-16, 41. Where appropriate, and largely for context, the Court has also referenced certain allegations from the Amended Complaint.

On December 1, 2022, Plaintiff was a pretrial detainee at MacDougall. Defs. 56(a)(1), ECF No. 38-2 at ¶¶ 1–3. On December 1, 2022 and/or the early morning hours of December 2,

---

[3] Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement, which contains separately numbered paragraphs corresponding to the movants' Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. The MSJ Defendants informed Plaintiff of his obligation to respond to their Motion for Summary Judgment, and the contents of a proper response. *See* ECF No. 39. Despite receiving this notice, Plaintiff did not submit a Local Rule 56(a)(2) Statement, nor any response to the Motion for Summary Judgment. The fact that Plaintiff is unrepresented does not excuse him from complying with the Court's procedural and substantive rules. *See Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). Thus, the facts contained in the MSJ Defendants' Local Rule 56(a)(1) Statement, where supported by the evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)(3); *see, e.g., Small v. Clements*, No. 3:18-CV-1731 (KAD), 2019 WL 5727388, at *1 n.1 (D. Conn. Nov. 5, 2019) (deeming uncontroverted facts admitted where a litigant failed to file a responsive statement of facts). The Court has, however, considered the allegations set forth in the Amended Complaint in determining the existence of any material issue of fact. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e).").

2022, Plaintiff drank "pruno," a contraband alcoholic beverage made by prisoners. *Id.* at ¶ 5. Thereafter, DOC staff noticed that Plaintiff appeared to be intoxicated, but he refused to give a specimen to DOC for a saliva alcohol test. *Id.* at ¶¶ 6–7. As such, at approximately 10:00am, Defendant Rodriguez and other officers handcuffed and escorted Plaintiff to the Restricted Housing Unit ("RHU"). *Id*. at ¶ 9. While handcuffed, Plaintiff was placed in a locked cell in RHU. *Id.* at ¶ 10. Although Plaintiff initially refused to comply with staff orders to allow the removal of his handcuffs through a trapdoor on the cell door, he eventually complied after Defendant Batten reasoned with him. *Id.* at ¶ 11.

About an hour later, Defendant Batten returned to Plaintiff's cell with other correction officers and reported for the video recording that: "[i]t has been determined by mental health that [Plaintiff] is going to go on [Behavioral Observation Status]" ("BOS"). *Id.* at ¶¶ 12–13. Plaintiff was told that he needed to move to the cell next door based on mental health's recommendation, and for more than thirty minutes Defendant Batten attempted to convince Plaintiff to follow his repeated orders to allow correction officers to move him to the next cell. *Id.* at ¶¶ 14–15. Plaintiff repeatedly refused and was verbally noncompliant. *Id.* at ¶ 15. Defendant Batten allowed two other correction officers, mental health staff, and a medical staff member to attempt to reason with Plaintiff, but he continued to ignore staff orders. *Id.* at ¶¶ 19, 21–24.

Defendant Batten warned Plaintiff repeatedly that a chemical agent would be used if he did not comply with correction officers, and Plaintiff acknowledged that he understood force would be used if he did not comply. *Id.* at ¶¶ 26–27. After over more than thirty minutes and repeated warnings, Defendant Batten announced for the video recording that he was prepared to use a chemical agent on Plaintiff for being noncompliant. *Id.* at ¶ 29. Multiple correction officers were

3

then gathered around Plaintiff's cell door, *id.*, at which point Plaintiff stopped protesting, and was handcuffed and led toward the other cell. *Id.* at ¶ 30.

Correction officers then assisted Plaintiff into a safety gown in the RHU hallway, escorted Plaintiff to his next cell, and shut and locked the cell door. *Id.* at ¶ 31. Defendant Batten ordered Plaintiff to put his hands through the trap door of his cell three times so that he could retrieve the handcuffs, but Plaintiff refused. *Id.* at ¶¶ 32–39. Plaintiff said: "[g]o ahead, fucking hurt me already, I don't care." *Id.* at ¶ 37. Correction officers then opened Plaintiff's cell door, and Defendant Batten gave Plaintiff a fourth order to come to the now-open door to allow officers to remove his handcuffs, but Plaintiff still did not comply. *Id.* at ¶¶ 40–41. Defendant Batten then ordered Plaintiff to sit on the bed in his cell three times, but Plaintiff refused and remained verbally noncompliant. *Id.* at ¶¶ 42, 44–45. Defendant Batten then ordered Plaintiff to "turn around and face the wall[,]" and finally told Plaintiff, "[l]isten if you don't follow directions, a chemical agent will be used." *Id.* at ¶¶ 46–47. Defendant Batten gave this order to Plaintiff four more times. *Id.* at ¶ 49. Defendant Batten then deployed a chemical agent on Plaintiff. *Id.* at ¶ 50. Correction officers brought Plaintiff back out of the cell for decontamination in a nearby shower.[4] *Id.*

---

[4] Plaintiff alleges that after he was sprayed with the chemical agent, the cell door was shut. *See* Am. Compl. at ¶ 37. He alleges that after a few minutes, a social worker came and spoke to him, and he stated only that his eyes were burning, and he could not focus. *Id.* at ¶ 39. Plaintiff alleges that when the social worker left, Defendants Grasso and Carlson entered his cell and slammed him against the wall. *Id.* at ¶ 40. He claims that these Defendants then dragged him into the corridor and slammed him face-first into the wall. *Id.* at ¶ 41. He also alleges that Defendant Batten ripped off his shorts and boxers and excessively searched his person in the corridor while he was restrained by Defendants Grasso and Carlson. *Id.* at ¶ 43. These allegations formed the basis of Plaintiff's excessive force and unlawful search claims against Defendants Grasso and Carlson. Plaintiff further alleges that, beginning on December 2, 2022, he complained to correctional staff that his head hurt, and he alleged that he requested medical attention for the injuries from the assault, but he was ignored. *Id.* at ¶ 55. Plaintiff claims to have suffered from increased headaches, ear pain, nausea, and dizziness since the incident, and further alleges that although the Nurse Defendants provided treatment for other injuries and medical complaints, they did not acknowledge Plaintiff's verbal or written complaints relating to the injuries he incurred on December 2, 2022. *Id.* at ¶¶ 58, 60. These allegations formed the basis for Plaintiff's claims against the Nurse Defendants.

**Procedural History**

On March 22, 2024, Plaintiff filed the Amended Complaint, asserting claims arising from the alleged use of force and the search which occurred on December 2, 2022, as well as the alleged ensuing failure to provide Plaintiff with medical care. *See* Am. Compl., ECF No. 15. On April 29, 2024, the Court issued its Initial Review Order, substantially narrowing the claims at issue. *See* IRO, ECF No. 18. On August 15, 2024, the MSJ Defendants filed their Answer to the Amended Complaint. ECF No. 30. On February 27, 2025, the MSJ Defendants filed the instant Motion for Summary Judgment. MSJ, ECF No. 38. To date, Plaintiff has not filed a response to the Motion for Summary Judgment. Indeed, Plaintiff's last filing was on June 20, 2024, when he submitted a Notice of Change of Address. *See* ECF No. 27.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Discussion**

The MSJ Defendants seek summary judgment on the grounds that: (a) Plaintiff failed to exhaust his administrative remedies before commencing this action; (b) Plaintiff's claims fail as a matter of law; and (c) they are entitled to qualified immunity. The Court agrees that the undisputed facts establish conclusively that Plaintiff failed to exhaust his administrative remedies.[5]

<u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. §

---

[5] For this reason, the Court does not address herein the MSJ Defendants' additional arguments.


1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). Indeed, the PLRA requires "proper exhaustion," meaning the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined. *Jones v. Bock*, 549 U.S. 199, 217–18 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion, which "is mandatory," necessitates "using all steps that the [government] agency holds out, and doing so properly"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation marks and internal citations omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court may find that

internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but that the Court is guided by them, *see Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. *See Jones*, 549 U.S. at 216. Thus, Defendants bear the burden of proof. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Once Defendants establish that administrative remedies were not exhausted before the inmate commenced the action, Plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See id*.

As relevant here, Plaintiff's excessive force, unlawful search, and failure to protect claims against Defendants Batten, Rodriguez, Grasso, and Carlson are governed by the current version of DOC's Administrative Directive 9.6 ("A.D. 9.6"), which was in effect as of April 30, 2021. Plaintiff's deliberate indifference to medical needs claims against the Nurse Defendants are governed by the current version of the DOC's Administrative Directive 8.9 ("A.D. 8.9"), which was also in effect as of April 30, 2021.

*Administrative Directive 9.6*

Administrative Directive 9.6(6)(A) requires an inmate to "attempt to seek informal resolution prior to filing an inmate grievance." Specifically, an inmate can attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See* A.D. 9.6(6)(a)(i)(1) & (2).

If the attempts to resolve the matter verbally are not effective, the inmate can make a written request for informal resolution by sending a specific form, CN 9601, to the appropriate staff member. A.D. 9.6(6)(a)(i)(3). The written form is required to "clearly state the problem and the action requested to remedy the issue." A.D. 9.6(6)(a)(i)(4)(a). Correctional staff are required to respond to a written request form within fifteen business days of receipt. A.D. 9.6(6)(a)(i)(8).

If an inmate does not receive a response to the written request within fifteen business days or if the inmate is not satisfied with the response to his request, the inmate can file a Level 1 Grievance. A.D. 9.6(6)(a)(ii)(1) & (2). The Level 1 Grievance is required to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and inmates are directed to include with the grievance a copy of the response to the inmate's written request to resolve the matter informally, *i.e.*, the CN 9601, or an explanation for why the form is not attached. A.D. 9.6(6)(a)(ii)(2)–(4). The Unit Administrator must respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the grievance. A.D. 9.6(6)(b)(i)(3). The grievance can be returned without disposition, rejected (if the administrative remedy fails to satisfy the procedural requirements of the requested remedy), denied, compromised, upheld, or withdrawn. A.D. 9.6(5)(n)(i)-(ii); A.D. 9.6(6)(b)(i)(2)(a)(1)-(2); *see also* A.D. 9.6(3)(h). If an administrative remedy is rejected as procedurally improper, the inmate shall have five calendar days to correct the defect and resubmit the administrative remedy request. A.D. 9.6(6)(b)(i)(2)(a)(1). But if the resubmitted request for administrative remedy does not correct the

9

defect, the administrative remedy request shall be rejected and not subject to further appeal. A.D. 9.6(6)(b)(i)(2)(a)(i)(2).

The procedures further provide that the inmate can appeal the Unit Administrator's disposition of the Level 1 Grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 Grievance. *See* A.D. 9.6(6)(b)(ii). An inmate seeking to appeal a Level 1 Grievance is required to file the Level 2 Grievance appeal within five calendar days of the inmate's receipt of the decision on the Level 1 Grievance. *See* A.D. 9.6(6)(b)(ii)(1). An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 Grievance in a timely manner is required to do so within sixty-five days of the date the Level 1 Grievance was filed by the inmate. A.D. 9.6(6)(b)(ii)(2). Level 2 Grievance appeals are reviewed by the appropriate District Administrator. A.D. 9.6(6)(b)(ii)(3)(a). The District Administrator must respond to the Level 2 Grievance appeal within thirty business days of receipt of the appeal. A.D. 9.6(6)(b)(ii)(4).

Level 3 Grievance appeals are restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 Grievance appeals to which there had been no timely response by the District Administrator. *See* A.D. 9.6(6)(b)(iii)(1). Level 3 Grievance appeals are reviewed by the Commissioner of the Department of Correction or his designee. *See* A.D. 9.6(6)(b)(iii)(3).

*Administrative Directive 8.9*

Under A.D. 8.9, there are two types of health services administrative remedies.

A diagnosis and treatment remedy seeks "review of a diagnosis or treatment decision made by a physician, psychiatrist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist." A.D. 8.9(6)(a)(i). An administrative issue

remedy seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9(6)(a)(ii).

The applicable procedures are as follows. Prior to filing any Health Service Administrative Remedy ("HSAR"), the inmate "must attempt to seek informal resolution[.]" A.D. 8.9(6)(b)(ii)(1). That informal resolution may include attempts to resolve the issue verbally with the appropriate staff member. A.D. 8.9(6)(b)(ii)(2). If the verbal communication is unsuccessful, the inmate "shall submit a written request via CN 9601, Inmate Request Form." A.D. 8.9(6)(b)(ii)(3). If an inmate pursues the written option, a DOC official must respond within 15 business days from receipt of the written inmate request. A.D. 8.9(6)(b)(ii)(7). If the inmate is not satisfied with the offered informal resolution, the inmate may file a request for an HSAR. A.D. 8.9(6)(b)(iii)(1). The inmate "shall" attach the CN 9601 form, with the staff member response, or the inmate must include an explanation indicating why the CN 9601 is not attached. A.D. 8.9(6)(b)(iii)(2). The inmate must submit a completed CN 8901, HSAR form-Level-1, in the HSAR box. A.D. 8.9(6)(b)(iii)(3). The inmate's HSAR Form-Level 1 must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the HSAR. A.D. 8.9(6)(b)(iii)(4).

For review of an inmate's diagnosis or treatment, the inmate must file a request for an HSAR and "shall check the 'Diagnosis/Treatment' box on the CN 8901, HSAR Form-Level 1[.]" A.D. 8.9(6)(c)(i)(1). The inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment" and "shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." *Id.* Upon receipt of an inmate's CN 8901, HSAR Form-Level 1, the HSAR Coordinator "shall consult with the provider who made the decision to determine what

11

action, if any, should be taken." A.D. 8.9(6)(c)(i)(2)(a).  "If the provider decides that the existing diagnosis or treatment is appropriate, the remedy shall be denied and not subject to further appeal." *Id.*  At that point, the administrative remedies are exhausted.

An inmate seeking review of an administrative issue must submit a completed CN 8901, HSAR Form-Level 1.  A.D. 8.9(6)(c)(ii)(1) & (3).  Directive 8.9(4)(a)(b) contains provisions for filing a HSAR, which includes, in relevant part: "[t]he request for a [HSAR] and the action sought should be stated simply and coherently."  A.D. 8.9(4)(a)(b).  There is no requirement in Directive 8.9 that requires an inmate to specifically name the provider in an Administrative Review health services administrative remedy.  The Level 1 decision on an administrative issue remedy is issued in writing within 30 days of receipt of the CN 8901 and is made by the HSARC in consultation with appropriate health care supervisors.  *See* A.D. 8.9(6)(c)(ii)(1) & (3).  If the inmate's HSAR is not in compliance with the terms of Directive 8.9, it shall be rejected, and the inmate may correct a procedural deficiency within five calendar days.  A.D. 8.9(6)(c)(ii)(2)(a).  If the inmate does not correct the defect, the request for the HSAR will be rejected without an opportunity for appeal.  *Id.*

<u>Plaintiff's Failure to Exhaust His Claims</u>

The MSJ Defendants maintain that Plaintiff has failed to exhaust his administrative remedies with respect his claims against Defendants Batten and Rodriguez, as contemplated in A.D. 9.6.[6]  The MSJ Defendants further maintain that Plaintiff failed to exhaust his administrative remedies as to his claims against the Nurse Defendants, as contemplated in A.D. 8.9.  The Court agrees.

---

[6] Although Defendants Grasso and Carlson (*i.e.*, John Does #5 and #6) have not been joined to this case, the Court has also considered herein Plaintiff's failure to exhaust with respect to these Defendants, because the claims against them stem from the same alleged events of December 2, 2022, and are governed by A.D. 9.6.

Regarding Plaintiff's excessive force, unlawful search, and failure to intervene claims, the undisputed material facts indicate that that there is no record of any Level 1 custody grievances filed by Plaintiff at MacDougall for the entire fiscal year of 2023, *i.e.*, between July 1, 2022 and June 30, 2023. Defs. 56(a)(1) at ¶ 52. The undisputed material facts further indicate that there is no record of any Level 2 or other custody grievances filed by Plaintiff with the appropriate DOC inmate administrative remedies coordinator between December 1, 2022, and May 9, 2023. *Id*. at ¶ 53. Moreover, with respect to Plaintiff's deliberate indifference claims against the Nurse Defendants, the undisputed material facts likewise reveal that there is no record that Plaintiff ever filed any HSAR in the medical grievance logs of either MacDougall or Osborn between December 1, 2022, through June 30, 2023. *Id.* at ¶ 54. This evidence establishes that the MSJ Defendants' have met their threshold burden of demonstrating that Plaintiff failed to exhaust his administrative remedies for all his claims.[7]

Plaintiff has failed to rebut this showing. As an initial matter, Plaintiff has not filed any sort of response to the instant Motion for Summary Judgment or otherwise attempted to dispute the material facts set forth by the MSJ Defendants therein. On this basis alone, the Court concludes that Plaintiff has failed to meet his burden of showing either that he did, in fact, exhaust his administrative remedies, or that such remedies were "unavailable" to him.[8] *See Hubbs*, 788 F.3d at 59. Notwithstanding, the Court considers the allegations in the Amended Complaint, as well as the MSJ Defendants' additional material facts, which reveal that during discovery, Plaintiff

---

[7] These material facts are supported by: (1) the sworn declaration of Morrell Walker, the keeper of records for all inmate grievances and grievance appeals; (2) the sworn declaration of Donald Acus, the inmate administrative remedies coordinate and litigation liaison for the District Administrator of the District 1 Office; and (3) the sworn declaration of Colleen Gallagher, the designee for the Health Services Division of the health service reviews, or "medical grievances," filed by inmates at all DOC facilities. *See* Defs. Exs. A, B, and C, ECF Nos. 38-3, 38-4, 38-5.

[8] Given Plaintiff's utter failure to engage in this litigation for over 15 months, this case is arguably subject to dismissal pursuant to Fed. R. Civ. P. 41(b), based on Plaintiff's failure to prosecute his claims.

produced several unrecorded grievances and a HSAR form, including: (a) a request form dated 12/5/22; (b) a Level 1 custody grievance form dated 12/26/22; (c) a Level 2 custody grievance form dated 2/6/23; and (d) a Level 1 medical grievance form dated 4/21/23.  *See* Defs. 56(a)1, at ¶¶ 55, 58 (citing Exhibits K and L, ECF Nos. 38-13, 38-14).  Plaintiff also claims to have filed a Level 3 custody grievance regarding the underlying incident, and otherwise avers that he filed all necessary grievances regarding his medical care issues.  *See id*. at ¶ 57, 59.  However, this evidence and Plaintiff's self-serving claims do not adequately rebut the MSJ Defendants' well-founded demonstration that he failed to exhaust his administrative remedies.  *See, e.g.*, *Khudan v. Lee*, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) ("Plaintiff's 'self-serving' and 'incomplete' testimony that he sent an appeal to [the grievance administrator] is insufficient to create a *genuine* dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent.").  Indeed, notwithstanding that the forms mention the alleged incidents, their mere existence in the evidentiary record does not so much as suggest that they were actually filed with DOC, much less that Plaintiff thereafter proceeded through <u>all</u> of the required steps of the applicable administrative grievance process.  *See Jones*, 549 U.S. at 217–18.  In fact, none of these forms contain any official date stamps or indicia that they were submitted at all, and there is no additional record evidence whatsoever that they were ever filed or received.  To the contrary, the records that do exist reveal that they were not, in fact, filed.  The Court agrees with the MSJ Defendants that the PLRA would be rendered superfluous if inmates could overcome its stringent requirements—even in the face of official grievance log records and sworn affidavits by DOC

personnel—by merely providing unrecorded, unstamped purportedly filed grievance forms bearing only Plaintiff's entries.[9]

In sum, Plaintiff's self-serving statements and unrecorded grievance forms are insufficient to create a genuine dispute of fact when weighed against the strength of the record evidence, which conclusively demonstrates that Plaintiff did not, in fact, file any grievances at all. Accordingly, the MSJ Defendants' Motion for Summary Judgment is **GRANTED**. For the same reasons, the Court also dismisses Defendants Grasso and Carlson, *i.e.*, John Does #5 and #6.[10]

**CONCLUSION**

For the foregoing reasons, the MSJ Defendants' Motion for Summary Judgment is **GRANTED**. Additionally, Plaintiff's claims as to Defendants Grasso and Carlson, *i.e.*, John Does #5 and #6, are **DISMISSED**. Accordingly, the Clerk is directed to enter judgment in favor of all Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of September 2025.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE

---

[9] The Amended Complaint also asserts that the administrative grievance process was unavailable to Plaintiff. *See* Am. Compl. at ¶ 73. However, it is well settled that "a *pro se* party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 462 (S.D.N.Y. 2023) (citation omitted). Moreover, the Second Circuit has recognized that Connecticut's DOC Administrative Directives are "not so opaque as to be unavailable," *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016), and that that prison officials' mere failure to respond to a plaintiff's grievance does not render administrative remedies unavailable to him. *See Taylor v. New York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021) (summary order) (concluding that "prison officials' failure to respond to some of [plaintiff's] grievances did not render the [] administrative procedure unavailable" because "[t]he [grievance procedure] contemplates that prison officials might not always respond to inmates' grievances" and "sets forth the procedure to follow in such circumstances."); *Taveras v. Semple*, No. 3:15-CV-531 (SALM), 2023 WL 112848, at *10 (D. Conn. Jan. 5, 2023) (relying on *Taylor* and concluding that "the administrative remedies under A.D. 9.6 were not unavailable to plaintiff merely 'because prison officials did not respond to his' informal request and grievance"). As such, Plaintiff has not created any genuine dispute of fact as to whether DOC's applicable administrative grievance process was "unavailable" to him.

[10] Notwithstanding that Plaintiff has inexcusably neglected to prosecute this case for over 15 months, to the extent Plaintiff believes that he can conclusively demonstrate that his failure to exhaust is not fatal as to the claims against Defendants Grasso and/or Carlson, he may timely seek reconsideration of the Court's decision herein as to Defendants Grasso and Carlson.